U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED
SEP 2 0 2005
ROBERT H. SHEMWELL, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| PAUL JACKSON,<br>    Petitioner | CIVIL ACTION<br>SECTION "P"<br>NUMBER CV03-1362-M |
| VERSUS | |
| BURL CAIN, WARDEN,<br>    Respondent | JUDGE ROBERT G. JAMES<br>MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a petition for writ of habeas corpus filed on July 18, 2003, pursuant to 28 U.S.C. § 2254, in forma pauperis, by pro se petitioner Paul Jackson ("Jackson") Jackson is contesting his 1999 conviction, following a bench trial in the Louisiana 4th Judicial District Court in Ouachita Parish, on one count of second degree murder, and his sentence of life imprisonment. The first two claims presented in Jackson's petition were reviewed and dismissed by the District Judge on April 6, 2004 (Doc. Item 16). Jackson's remaining two claims are now before the court for disposition: (3) denial of due process when the State failed to preserve favorable evidence, and (4) denial of due process when the prosecutor solicited evidence of other crimes. The Respondent answered the petition (Doc. Item 15).

### Facts

The facts of this case set forth by the Louisiana Second Circuit Court of Appeal, at State v. Jackson, 34,076 (La.App. 2 Cir. 12/6/00), 774 So.2d 1046, 1048, writ den., 2002-1917 (La.

6/20/03), 847 So.2d 1228, are as follows:

> "On June 7, 1997, Paul Gary Jackson stabbed two women with two kitchen knives. The victims were Lori Thomas, his girlfriend, and Lori's mother, Ellen Thomas. Ellen Thomas was stabbed numerous times, but survived. Lori Thomas was stabbed in the back three times. She bled to death, with the blade of one of the knives broken off in her back. Neighbors witnessed Jackson committing the stabbings and testified that he ceased stabbing Lori Thomas only when he was forced to, at gunpoint, by a man who happened to be driving by.
> "Jackson was arrested a short distance from the scene wearing a pair of shorts with no shirt. He had blood on his person and clothing. The defendant was arrested and, after being given his Miranda warnings, admitted to law enforcement officers that he stabbed Lori. A grand jury indictment was returned charging the defendant with the second degree murder of Lori Thomas. [FN1]
> "FN1. This trial addressed only the murder of Lori Thomas, and not the charged offense of attempted second degree murder of Ellen Thomas.
> "The defendant originally entered a plea of not guilty. He later withdrew that plea and entered a plea of not guilty and not guilty by reason of insanity. A sanity commission was appointed and found that the defendant was competent to stand trial. The defendant waived his right to a trial by jury and proceeded to trial by a judge alone. On March 3, 1999, the defendant was found guilty as charged. The defendant filed a motion for post verdict judgment of acquittal, arguing that the evidence supported only a verdict of manslaughter. The motion was denied. The mandatory sentence for second degree murder, life imprisonment without benefit of parole, probation or suspension of sentence, was then imposed upon the defendant."

## Rule 8(a) Resolution

This court is able to resolve the merits of this <u>habeas corpus</u> petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims, and the State court records provide the required and adequate factual basis necessary to the resolution of

2

the habeas corpus petition. Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

## Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State Court proceeding. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254(d)(1), and questions of fact are reviewed under Section 2254(d)(2). Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194 (2001), and cases cited therein.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts. Martin, 246 F.3d at 476, and cases cited therein.

A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable. A federal court cannot grant habeas relief simply by concluding that the state court decision applied clearly established federal law erroneously; the court must conclude that such application was also unreasonable. Martin, 246 F.3d at 476, and cases cited therein.

### Law and Analysis

Claim No. 3 - Favorable Evidence

Jackson contends the state failed to preserve favorable evidence, in violation of Jackson's Fourteenth Amendment right to due process, referring to the blood found in the victim's apartment which he claims was never tested, the victim's blood-alcohol level was never tested, and Jackson's own injuries were not documented by the police.

The failure of law enforcement officers to preserve evidence, the exculpatory value of which is unknown, does not violate the Due Process Clause generally, absent a showing that the officers acted in bad faith. Arizona v. Youngblood, 488 U.S. 51, 57-58, 109 S.Ct. 333 (1988). This is true even if the defendant made a specific request for production of the evidence prior to its destruction. Illinois v. Fisher, 540 U.S. 544, 548, 124 S.Ct. 1200 (2004).

In the case at bar, Jackson has neither alleged nor shown the police acted in bad faith. In fact, Jackson's actual claim is not that the State failed to preserve the evidence, but that it failed to perform certain tests, and that the police failed to document Jackson's inebriation.

In Youngblood, 488 U.S. at 59, 109 S.Ct. at 338, the United States Supreme Court strongly disagreed with the suggestion that the Due Process is violated when the police fail to use a particular investigatory tool and held that, in such cases, "the defendant is free to argue to the finder of fact that a [particular] test might have been exculpatory, but the police do not have a constitutional duty to perform any particular tests." See also, Guidry v. Cain, 2005 WL 1330133, *5 (W.D.La. May 31, 2005). The same rationale applies a fortiori to Jackson's claim that his right to due process was violated by the officers' failure to document his inebriation. Therefore, defendant has not stated a claim for violation of a constitutional right.

Claim No 4 - Other Crimes Evidence

Jackson also contends he was denied due process when the prosecutor solicited evidence of other crimes. Jackson is referring to the prosecutor's question to Jackson as to whether he had ever hit another woman before, and Jackson's response that he had hit other women before in self-defense (Tr. p. 767). When Jackson's attorney objected and moved for a mistrial, the trial judge denied the motion but sustained the objection to the question on the ground that it referred to other incidents and admonished himself to disregard the question and answer (Tr. p. 768).

Mere violation of evidentiary rules by the state trial court does not in itself invoke habeas corpus relief. Panzavecchia v. Wainwright, 658 F.2d 337, 340 (5th Cir. 1981). The admission of improper evidence in a state criminal trial will constitute grounds for habeas relief if fundamental fairness was prevented thereby. What elevates the mistake to a constitutional plane is at least two-fold. First, the mistake must be material in the sense of a crucial, critical, highly significant factor. Second, it must have some state complicity in it. Shaw v. Estelle, 686 F.2d 273, 275 (5th Cir. 1982), cert. den., 459 U.S. 1215, 103 S.Ct. 1215 (1983), and cases cited therein. Also, Hills v. Henderson, 529 F.2d 397 (5th Cir. 1976), cert. den., 429 U.S. 850, 97 S.Ct. 139 (1976).

Louisiana law generally prohibits the admission of "other crimes evidence," that is, evidence of criminal conduct uncharged

in the subject indictment, with exceptions for proving identity, system or res gestae. Robinson v. Whitley, 2 F.3d 562, 566 (5th Cir. 1993), cert. den, 510 U.S. 1167, 114 S.Ct. 1197, 127 L.Ed.2d 546 (1994), citing State v. Prieur, 277 So.2d 126, 128 (La. 1973). In Louisiana, evidence of other crimes can be admitted to show intent, knowledge or system, but not to show motive; however, the Fifth Circuit has held, in Webb v. Blackburn, 773 F.2d 646, 652 (5th Cir. 1985), that other crimes evidence introduced to show motive, in violation of Louisiana evidentiary rules, does not rise to the level of a constitutional violation.

In the case at bar, in response to a question by the prosecutor as to whether he had ever hit any women before the victim, Jackson testified he had hit women in self-defense (Tr. p. 767). Striking someone in self-defense does not constitute a crime. See La.R.S. 14:19.[1] Therefore, the prosecutor did not elicit testimony from Jackson regarding other crimes evidence.

In fact, the trial judge did not regard the testimony as "other crimes" evidence, but instead treated it as evidence of other, similar acts, which falls within the same evidentiary rule,

---

[1] Section 19, Use of force or violence in defense, states: "The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession; provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this article shall not apply where the force or violence results in a homicide."

7

La.C.E. rule 404(B). Rule 404(B)(1) states,

> "Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding."

A mistrial may be warranted on the basis of prejudicial remarks or improperly elicited testimony pursuant to either La.C.Cr.P. art. 770 or art. 771. However, Articles 770 and 771 of the Code of Criminal Procedure are designed to guard against improprieties in the presence of the jury, and do not mandate a mistrial in a bench trial. State v. Marshall, 359 So.2d 78, 83 (La. 1978), citing State v. Maney, 242 La. 223, 135 So.2d 473 (1961).

The case at bar was a bench trial. The trial judge sustained Jackson's objection, stated he would disregard the question and answer, and correctly denied the motion for mistrial. Therefore, Jackson's trial was not rendered fundamentally unfair by evidentiary errors.

This ground for habeas relief is meritless.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that

Jackson's Section 2254 petition for writ of habeas corpus be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____ day of September, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE